UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

ADVANCED VIDEO TECHNOLOGIES LLC,  :

       Plaintiff,  :  Case No. 1:11-cv-8908 (CM)

       vs.  :

RESEARCH IN MOTION LTD., and  :
RESEARCH IN MOTION CORPORATION
         :

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X


**RESEARCH IN MOTION LTD. AND RESEARCH IN MOTION CORPORATION'S
RESPONSE TO DEFENDANT MOTOROLA MOBILITY LLC'S
OPENING CLAIM CONSTRUCTION BRIEF**

## **TABLE OF CONTENTS**

                                                                                               Page

**I. DISPUTED TERMS**..................................................................................................................1

      **A. RIM'S PROPOSED CONSTRUCTIONS OF "INTERIM STORAGE OF INCOMING . . . VIDEO DATA" AND "VIDEO INPUT DATA" REFLECT THE TRUE SCOPE OF THE CLAIMS**................................................................1

      **B. THE PARTIES AGREE ON THE MEANING OF "VIDEO COMPRESSOR/DECOMPRESSOR DISPOSED FULLY WITHIN THE CHIP" WHICH CAN BE UNDERSTOOD ACCORDING TO ITS PLAIN MEANING**..............................................................................................................4

      **C. RIM AND MOTOROLA AGREE THAT THE PROPER CONSTRUCTIONS OF "VIDEO INPUT CONNECTION" AND "VIDEO INPUT CONNECTION FROM A CAMERA" REQUIRE ANALOG SIGNALS** .......5

**II. CONCLUSION**.........................................................................................................................7

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cordis Corp. v. Boston Scientific Corp.*,
    658 F.3d 1347 (Fed. Cir. 2011)......................................................................................1

*Spectrum Int'l, Inc. v. Sterilite Corp.*,
    164 F.3d 1372 (Fed. Cir. 1998)......................................................................................3

Defendants Research In Motion Ltd. and Research In Motion Corporation (collectively, "RIM") respectfully submit this brief regarding construction of certain disputed terms in U.S. Patent No. 5,781,788 C1 (the '788 patent) in response to Defendant Motorola Mobility LLC's Opening Claim Construction Brief (*Advanced Video Technologies LLC v. Motorola Mobility LLC,* No.: 12-CV-918(CM)(HBP) (S.D.N.Y) (Dkt. No. 30) ("Motorola Br.")).  RIM submits this brief pursuant to the Court's July 25, 2012 order.

I. **DISPUTED TERMS**

   A. **RIM'S PROPOSED CONSTRUCTIONS OF "INTERIM STORAGE OF INCOMING . . . VIDEO DATA" AND "VIDEO INPUT DATA" REFLECT THE TRUE SCOPE OF THE CLAIMS**

| '788 Claim Term | AVT's proposed construction | RIM's Proposed Construction | Motorola's Proposed Construction |
|---|---|---|---|
| "interim storage of incoming . . . video data" | "temporary storage of video data prior to or during compression or decompression by the video codec" | "temporary storage of incoming unprocessed video data" | "temporary storage of incoming video data prior to compression by the codec" |
| "video input data" | "video data prior to compression by a video codec" | "unprocessed video data" | "video data prior to compression by the codec" |

Motorola and RIM agree that AVT's proposed constructions for "interim storage of incoming…video data" and "video input data" attempt to reclaim scope surrendered during reexamination of the '788 patent.  *See Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347,1357 (Fed. Cir. 2011) ("Arguments made during the prosecution of a patent application are given the same weight as claim amendments.").  In particular, AVT distinguished its claimed invention from the Suzuki prior art reference in part because "the frame memory recited in the Suzuki reference . . . 'provides storage for video data that is in intermediate stages of

processing.'" (Motorola Br. at 14 (quoting reexamination history).) Likewise, AVT distinguished its claimed invention from the Bose prior art reference in part because "Bose does not specify whether the input video data is buffered in the FIFO and passed directly to the DRAM, or whether the input data is passed first to the processing components of the chip." (Motorola Br. at 14-15 (quoting reexamination history).)

AVT's proposed constructions—"prior to [or during] compression [or decompression]"—impermissibly attempt to recapture disclaimed claim scope and allow the video data to be subject to any type of intermediate processing, thereby creating ambiguity and uncertainty regarding the format of the claimed "video [input] data." RIM's proposed constructions, on the other hand, describe the video data in a single descriptive word—"unprocessed"—and thus precisely define the claim term as limited by AVT during prosecution.

Although Motorola makes the same arguments as RIM, its proposed constructions would also cover "video data that is in intermediate stages of processing," so long as that data has not yet been compressed. (*See* Dkt. No. 27, Research in Motion Ltd. and Research In Motion Corporation's Opening Claim Construction Brief ("RIM Opening Br.") at 7-9 (describing the surrender of claim scope during reexamination effected by AVT's attempts to distinguish Bose and Suzuki).) But, by distinguishing the claimed invention from the prior art, AVT clearly disclaimed video data that has undergone any form of "intermediate processing"—requiring the term "video [input] data" to be construed as "unprocessed video data" as proposed by RIM.

RIM's proposed constructions more accurately reflect the scope of the claims, by more closely holding AVT to the concessions it made during reexamination. Specifically, AVT distinguished its claimed invention from Suzuki because Suzuki "provides storage for video data that is in intermediate stages of *processing* between input and output" (Dkt. No. 28-3 at 16

(emphasis added)), and from Bose because Bose "does not specify . . . whether the input data is passed first to the *processing* components of the chip" (*id.* at 18 (emphasis added)).  In other words, AVT argued that Bose and Suzuki disclosed storage after *any* manner of processing—not only after compression.  *See Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998) ("[E]xplicit statements made by a patent applicant during prosecution to distinguish a claimed invention over prior art may serve to narrow the scope of the claim.").  Motorola's proposed construction requires storage only prior to compression, not prior to any manner of processing, as mandated by AVT's arguments made during reexamination.

Although Motorola's proposed constructions do not specify that "video [input] data" must be "unprocessed video data," Motorola's briefing supports RIM's proposed constructions: "[w]hen the claims themselves are considered in light of the specification it is clear the data being temporarily stored must be *unprocessed* because such data is coming directly from 'the video input connection' and thus *has not been processed* by any part of the codec."  (Motorola Br. at 16; *see also id.* at 17 (the claims at issue disclose "passing *unprocessed* data straight into the DRAM).)  Accordingly, RIM respectfully submits that its proposed constructions of the "video [input] data" terms—which limit the input video data to "unprocessed" data—most accurately reflect the scope of the claims in light of the specification and of the reexamination history.[1]

---

[1]  The difference between RIM's proposed constructions and Motorola's is narrow. Fundamentally, both RIM and Motorola correctly recognize that AVT's inclusion of data "prior to [or during] compression [or decompression]" is improper in light of the reexamination history.

- 3 -

### B. THE PARTIES AGREE ON THE MEANING OF "VIDEO COMPRESSOR/DECOMPRESSOR DISPOSED FULLY WITHIN THE CHIP," WHICH CAN BE UNDERSTOOD ACCORDING TO ITS PLAIN MEANING

| '788 Claim Term | AVT's proposed construction | RIM's Proposed Construction | Motorola's Proposed Construction |
|---|---|---|---|
| "video compressor/ decompressor disposed fully within the chip" | "circuitry located entirely within the chip for video compression and decompression" | No construction required. The term can be understood by a person of ordinary skill in the art by its plain and ordinary meaning. | "all circuitry required to perform video compression being located entirely within the chip" |

In its opening and responsive briefs, RIM explained that the term "video compressor/decompressor disposed fully within the chip" requires no construction because it can be understood according to its plain and ordinary meaning. RIM also pointed out that AVT's proposed construction was vague and appeared to allow for compression/decompression circuitry to be located outside the chip (in addition to whatever compression/decompression circuitry was "located entirely within the chip"). (RIM Opening Br. at 14-15.) Like RIM, Motorola recognizes that AVT's proposed construction is inaccurate because it "appears to allow relevant circuitry to be outside of the chip." (Motorola Br. at 22.)

Although RIM believes that the term does not need construction, if the Court were to construe the term, RIM respectfully requests that the Court adopt Motorola's proposed construction, which cures the defect of AVT's vague proposed construction.

- 4 -

### C. RIM AND MOTOROLA AGREE THAT THE PROPER CONSTRUCTIONS OF "VIDEO INPUT CONNECTION" AND "VIDEO INPUT CONNECTION FROM A CAMERA" REQUIRE ANALOG SIGNALS

| '788 Claim Term | AVT's proposed construction | RIM's Proposed Construction | Motorola's Proposed Construction |
| --- | --- | --- | --- |
| "video input connection" | "one or more external connection pins or ports for receiving video data" | "input for receiving analog video signals from a camera" | "input for receiving analog video signals from a camera" |
| "video input connection from a camera" | "one or more external connection pins or ports for receiving video data from a camera" | "an input for receiving analog video signals from a camera" | "input for receiving analog video signals from a camera" |

RIM and Motorola agree that the "video input connection" terms are limited by the specification and prosecution history to receive video signals in analog form.  Among other reasons, RIM and Motorola agree that the specification discloses that the codec chip is connected to "a NTSC-compatible [*i.e.*, analog] or PAL-compatible [*i.e.*, analog] camera," and that the Applicant for the '788 patent stated that "[t]he *claimed present invention* . . . samples *and digitizes*" the video signal from a camera.  (RIM Opening Br. at 16-17; *see also* Motorola Br. at 23-25.)

In response to Motorola's brief, AVT may argue that the "video input connection" can also receive digital signals, as it did in its response to RIM's opening brief, because the specification of the '788 patent discloses that "[i]t is an object of the present invention to provide a single-chip video codec for thirty frames per second common intermediate format (CIF) with 288 lines with 352 pixels per line and quarter CIF (QCIF) with 144 lines with 176 pixels per line,

coding and decoding." (*See* Dkt. No. 32, Responsive Claim Construction Brief of Plaintiff Advanced Video Technologies LLC at 9.)  AVT's argument, however, ignores the plain language of the claims and misinterprets the cited language from the specification.

Each asserted claim of the '788 patent requires "a video input connection *from a camera*."  AVT does not dispute, because it cannot, that the only cameras disclosed in the specification generate video signals in analog (NTSC or PAL) formats.  This is not merely an embodiment from the specification; it is what the Applicant told the Patent Office was its invention.

AVT cites the specification for the proposition that "[i]t is an object of the present invention to provide *a single-chip video codec for thirty frames per second*" with particular formats.  Independent claim 1, as originally filed, attempted to claim a "single-chip video codec for full-duplex communication of thirty frames per second video."  (Mehta Ex. A at 31).[2]  But the Patent Office rejected proposed claim 1, prompting the Applicant to file new claims 11-18 and to remark that "some of the claims, and especially claim 1 were too broad.  *So the original claims are replaced herein by a far narrower and limited set*."  (Mehta Ex. B at 11).  Claim 11, the first new independent claim, did not attempt to claim thirty frames per second video as original claim 1 had.  After another rejection, the Applicant explained that the single-chip video codec of "the *claimed present invention* receives the incoming video *and then* samples and *digitizes* it…," which requires the "video input connection from the camera" to receive an analog (*i.e.*, not previously digitized) signal.  (Dkt. No. 28-8 at 13.)  If the signal received by the "video

---

[2]   Exhibit A to the accompanying Declaration of Erin Greenfield Mehta (hereinafter, "Mehta Ex. __").

input connection from the camera" was already digital, there would be no need for the codec chip to digitize it.

This limitation on the scope of the claimed invention was not lost on the examiner in reexamination.  Indeed, the examiner made three separate references to the "instant invention (as currently described and claimed …)" receiving NTSC-compatible or PAL-compatible signals in the notice of intent to reexamine the claims of the '788 patent (Mehta Ex. C at 3-4), in one instance, specifically referring to agreement with the AVT's characterization of the scope of the alleged invention.  AVT represented to the Patent Office, and the Patent Office understood, that the video input signal from the camera was in analog form.  Thus, it was AVT that took the position that the video input connection was to receive analog data—the examiner merely agreed in writing with the AVT's position.

AVT's citation to a portion of the specification describing CIF and QCIF video resolutions does not support AVT's claim construction.  As the specification explains, CIF and QCIF merely indicate the resolution of a frame of video data (288 by 352, and 144 by 176, respectively).  (*See* Dkt. No. 28-1 at 2:8-12, 13:9-10 ("CIF is spatial resolution, whether CIF (352X288) or QCIF (176X144)").)  The specification in no way indicates that CIF – or QCIF – resolution data signals are output "from a camera" or are received by the "video input connection."  To the contrary, the specification merely indicates that video data output from the coder, and input into the decoder, may be in CIF or QCIF resolution (the two resolutions specified by the disclosed H.261 video format).  (*See* Dkt. No. 28-1 at 2:8-12, 2:49-51, 13:9-10.)  The specification never describes the video signals output "from a camera" or received by the claimed video codec on the "video input connection" as having CIF or QCIF resolution.  The only disclosure of video signals output "from the camera" and received on the "video input

connection" are those in analog NTSC or PAL formats.  (*See* Dkt. No. 28-1 at 3:38-41.)  In short, the disclosure of the CIF and QCIF resolutions have nothing to do with whether the "video input connection [from a camera]" receives digital data, as AVT would have the Court find.

Furthermore, as the H.261 video standard stated prior to the filing date of the '788 patent: "To permit a single Recommendation to cover use in and between regions using 625- and 525-line television standards, the source coder operates on pictures based on a common intermediate format (CIF)."  (Mehta Ex. D at § 2.1.)  The references to 625-line and 525-line would be understood by one of ordinary skill in the art to refer to PAL and NTSC, respectively.  Thus, the references to CIF (and QCIF) are entirely consistent with a system that receives NTSC and PAL analog signals.

Because AVT's proposed construction would allow for the video input connection to receive digital data from the camera, contrary to the disclosure of the '788 patent and statements made during prosecution, AVT's proposed constructions should be rejected.

## II.　CONCLUSION

For the foregoing reasons, RIM respectfully requests that the Court adopt RIM's proposed constructions.

Dated: October 4, 2012　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　WILMER CUTLER PICKERING
　　　　　　　　　　　　　　　　　　　　　　HALE AND DORR LLP


　　　　　　　　　　　　　　　　　　　　　By: */s/ Erin Greenfield Mehta*
　　　　　　　　　　　　　　　　　　　　　　　Dominic E. Massa (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　　Jason H. Liss (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　　60 State Street
　　　　　　　　　　　　　　　　　　　　　　　Boston, MA 02109
　　　　　　　　　　　　　　　　　　　　　　　t: (617) 526-6000

                                          f: (617) 526-5000

                                          Erin Greenfield Mehta
7 World Trade Center
250 Greenwich Street
New York, NY 10007
t: (212) 230-8800
f: (212) 230-8888
Attorneys for Defendants
Research In Motion Ltd., and
Research In Motion Corporation

- 9 -