# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X
ADVANCED VIDEO TECHNOLOGIES LLC, :

    Plaintiff, :   Case No. 1:11-cv-06604 (CM) (RLE)

  vs. :   (Consolidated with Case Nos. 1:11-cv-08908-CM and 1:12-cv-00918-CM)

HTC CORPORATION and HTC AMERICA, INC., :

    Defendants. :
---------------------------------------- X

## DEFENDANTS HTC CORP. AND HTC AMERICA, INC.'S
## RESPONSIVE CLAIM CONSTRUCTION BRIEF IN RESPONSE TO
## MOTOROLA MOBILITY LLC'S OPENING CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION AND PRELIMINARY STATEMENT | 1 |
| II. | PATENT-IN-SUIT, U.S. PATENT NO. 5,781,788 ("THE '788 PATENT") | 1 |
| III. | ARGUMENT ON DISPUTED TERMS | 2 |
|  | A. "interim storage of incoming . . . video data" | 2 |
|  | B. "interim storage of … outgoing video data" | 5 |
|  | C. "video compressor/decompressor disposed fully within the chip" | 8 |
|  | D. "dedicated hardware logic" | 11 |
| IV. | CONCLUSION | 14 |

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baran v. Med. Device Techs., Inc.*,
    616 F.3d 1309 (Fed. Cir. 2010)......................................................................................9

*Chimie v. PPG Industries*,
    402 F.3d 1371 (Fed. Cir. 2005)......................................................................................3

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008).........................................................................5, 13-14

*Cordis Corp. v. Boston Scientific Corp.*,
    658 F.3d 1347 (Fed. Cir. 2011)...................................................................................2-3

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
    527 F.3d 1379, 1383 (Fed. Cir. 2008)...........................................................................9

*Intamin Ltd. v. Magnetar Techs., Corp.*,
    483 F.3d 1328 (Fed. Cir. 2007)......................................................................................9

*Inv. Tech. Grp., Inc. v. Liquidnet Holdings, Inc.*,
    Nos. 07 Civ. 510(SAS), 07 Civ. 6886(SAS), 2010 WL 199912
    (S.D.N.Y. Jan. 19, 2010 ..................................................................................................6

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.*,
    415 F.3d 1335 (Fed. Cir. 2005).........................................................................3, 12, 13

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003)......................................................................................4

*PSN Ill., LLC v. Ivoclar Vivadent, Inc.*,
    525 F.3d 1159 (Fed. Cir. 2008).........................................................................9, 10, 11

*Springs Window Fashions LP v. Novo Indus.*,
    323 F.3d 989 (Fed. Cir. 2003)........................................................................................3

I.     INTRODUCTION AND PRELIMINARY STATEMENT

Defendants HTC Corp. and HTC America, Inc. (collectively "HTC") respectfully submit this responsive brief, at the Court's direction and permission, in response to the opening claim construction brief filed by Defendant Motorola Mobility LLC ("Motorola") on September 24, 2012 in *Advanced Video Technologies LLC v. Motorola Mobility LLC*, Case No. 1:12-cv-00918-CM-HBP (the "Motorola Action"). (*See* the Court's Minute Entry on July 24, 2012 in the Motorola Action; *see also* Dkt. No. 30, Defendant Motorola Mobility LLC's Opening Claim Construction Brief, in the Motorola Action (hereafter the "Moto. Op. Br.").)  HTC respectfully submits this responsive brief to address the following four claim terms among the eight discussed in Motorola's opening claim construction brief:

- "interim storage of incoming . . . video data"
- "interim storage of . . . outgoing video data"
- "video compressor/decompressor disposed fully within the chip"
- "dedicated hardware logic"

II.    PATENT-IN-SUIT, U.S. PATENT NO. 5,781,788 ("THE '788 PATENT")

As Motorola points out, the '788 patent stood on the precipice of invalidity during the reexamination. (*See* Dkt. No. 30 in the Motorola Action, Moto. Op. Br. at 3-4.)  The claims ultimately survived only through a combination of narrowing amendments and arguments to the Patent Office characterizing the alleged invention in a narrow fashion. (*See id.*)  Advanced Video Technology LLC ("AVT" or "Plaintiff"), having secured the benefit of its arguments to the Patent Office, now employs the common patent owner tactic of arguing that its previous statements to the Patent Office were "ambiguous" and that the prosecution history is irrelevant. But the prosecution history is unambiguous and compellingly relevant and confirms that the

patent would never have survived under the broad proposals AVT pursues in this litigation. AVT's litigation-inspired proposals and its creative interpretation of Federal Circuit law cannot trump the clear intrinsic record on which the public is entitled to rely.

## III. ARGUMENT ON DISPUTED TERMS

### A. "interim storage of incoming . . . video data"

| Motorola's Construction | AVT's Construction | HTC's Construction |
|---|---|---|
| "temporary storage of incoming video data prior to compression by the codec" | "temporary storage of video data prior to or during compression or decompression by the video codec" | "storage of incoming video data in the separate frame memory DRAM for buffering purposes without the incoming video data being processed or otherwise modified by any component of the single semiconductor chip" |

HTC agrees with Motorola that the "incoming video data" refers to data prior to compression by the codec, but HTC does not believe that Motorola's construction properly captures the clear and express disclaimers AVT made in the reexamination file history. Motorola's own account of the prosecution history acknowledges that AVT distinguished the claimed "interim storage" in the separate frame memory DRAM from the frame memory in the Suzuki reference because the Suzuki frame memory "provides storage for video data that is in intermediate stages of processing between being input and output." (*See* Dkt. No. 30 in the Motorola Action, Moto. Op. Br. at 14.) AVT made a similar distinction as to the Bose reference. (*See id.* at 15.) But Motorola's construction, by simply reciting temporary storage of incoming video data "prior to compression by the codec," does not necessarily exclude video data that is in "intermediate stages" of processing before the codec has completed the compression process.

As pointed out by Motorola (*id.* at 6), the Federal Circuit has made clear that "[a]rguments made during the prosecution of a patent application **are given the same weight as claim amendments**." *Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347, 1357 (Fed. Cir.

2011) (citing *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999)) (emphasis added). Arguments made to the Patent Office need not employ any "magic words" to result in a clear and unmistakable disclaimer. As the Federal Circuit has noted, "by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection." *Springs Window Fashions LP v. Novo Indus*, 323 F.3d 989, 994 (Fed. Cir. 2003) (quoting *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997)); *see also N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1345 (Fed. Cir. 2005). "Such a use of the prosecution history ensures that claims are not construed one way in order to obtain their allowance and in a different way against accused infringers." *Chimie v. PPG Industries*, 402 F.3d 1371, 1384 (Fed. Cir. 2005).

But this is precisely what AVT seeks through a construction that would recapture the disclaimed incoming video data in intermediate stages of processing while in the interim storage. AVT's repeated statements to the Patent Office regarding the "interim storage of incoming . . . video data" were clear and unmistakable and not merely "applicants' descriptions of the prior art," as AVT now contends. AVT's arguments to the Patent Office tied the arguments specifically to the "interim storage" claim limitation at issue here. (*See* Dkt. No. 35, HTC Corp. and HTC America, Inc.'s Responsive Claim Construction Brief (hereafter the "HTC Resp. Br."), in *Advanced Video Technologies LLC v. HTC Corp. et al.*, Case No. 1:11-cv-06604-CM-RLE (hereafter the "HTC Action"), at 4-5.)

With respect to Motorola's position, AVT may argue, as it did in the HTC Action, that "[f]or prosecution disclaimer to attach to a statement made during prosecution, the **effect** of the statement on the claimed invention must be both clear and unmistakable." (*See, e.g.*, Dkt. No. 34, Responsive Claim Construction Brief of Advanced Video Technologies (hereafter the

"AVT Resp. Br."), in the HTC Action, at 6 (emphasis added).)  The Federal Circuit has never articulated such a rule.  It is the content of the disavowing statement, not its purported "effect," that must be clear and unmistakable.  *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003).  The rule AVT has advanced is so strict that apparently nothing short of words to the effect of "I, the patentee, hereby clearly and unmistakably disclaim the following construction," accompanied with a narrowing amendment to the claim language itself, would affect the scope of the claim.  But this is clearly not the law.

AVT's arguments about the legal standard for prosecution disclaimer have relied heavily on an egregious mischaracterization of *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366 (Fed. Cir. 2008).  (Dkt. No. 34 in the HTC Action, AVT Resp. Br. at 7.)  AVT first gets the holding completely wrong by asserting that "the court declined to construe the remarks as a prosecution disclaimer" (*id.*), when in fact the court found a disclaimer and relied on it to affirm a judgment of non-infringement.  *See Computer Docking*, 519 F.3d at 1376-77 (adopting narrower construction based on prosecution disclaimer), 1379 (affirming summary judgment of non-infringement based on narrower construction).

As Motorola points out (*see* Dkt. No. 30 in the Motorola Action, Moto. Op. Br. at 6), the *Computer Docking* court actually held that a patentee can limit the meaning of a claim term "by clearly characterizing the invention in a way to try to overcome rejections based on prior art."  519 F.3d at 1374.  AVT, however, cites *Computer Docking* for the proposition that prosecution disclaimer does not apply to remarks that are "broader than necessary to distinguish the prior art" (Dkt. No. 34 in the HTC Action, AVT Resp. Br. at 7), but again, this is exactly the opposite of what the court said.  Contrary to AVT's assertion, the court held that "a disavowal, if clear and unambiguous, can lie in a single distinction among many."  519 F.3d at 1377.  The court quoted

with approval an earlier decision in which the Federal Circuit held that it had "not allowed [patentees] to assert that claims should be interpreted as if they had surrendered only what they had to." *Id.* (quoting *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1362 (Fed. Cir. 2005)) (alterations in *Computer Docking*).

The *Computer Docking* court also made clear that the rule restricting the use of remarks in the prosecution history that were "broader than necessary to distinguish the prior art" applies only when the specification **expressly defines** the disputed a claim term, which did not apply in that case. 519 F.3d at 1375, 1378 ("In this case, however, the specification of the '645 patent does not provide an express definition of 'portable computer' that would override or make the distinctions in the prosecution history ambiguous."). Here, AVT admits that "[o]ther than in the claims themselves, the term 'interim storage' does not appear in the specification of the '788 Patent." (Dkt. No. 30 in the HTC Action, AVT Opening Br. at 16.) Because the '788 specification provides no express definition of "interim storage," AVT's reliance on this principle fails.

**B.     "interim storage of … outgoing video data"**

| Motorola's Construction | AVT's Construction | HTC's Construction |
|---|---|---|
| Lacks written description support and the file history evidences the disavowal of this subject matter. If construed, it should mean "temporary storage of fully decompressed video data for output and display" | "temporary storage of decompressed or compressed video data" | "storage of decompressed video data ready to be output without any further processing by any component of the single semiconductor chip in the separate frame memory DRAM for buffering purposes" |

HTC agrees with Motorola that the term "outgoing video data" refers, if anything, to decompressed video data. Both constructions seek to capture the same concept – that the "outgoing video data" has been fully decompressed and can be output without further processing. HTC's construction incorporates additional clarifications regarding the purpose of the interim

-5-

storage ("buffering purposes") and what it means for the decompressed data to be fully decompressed ("without any further processing…").  HTC respectfully submits that these clarifications should be adopted as part of the construction.

One of the primary disputes as to the meaning of this term, if construed, is whether "outgoing video data" is fully decompressed video data, as both Motorola and HTC contend, or can be either decompressed or compressed video data, as AVT contends.  AVT likely will argue in response to Motorola's construction that its statement to the Patent Office, that "by its nature outgoing video data is <u>already processed</u> and is <u>indeed ready to be output</u>," was not a disclaimer. (*See* Dkt. No. 34 in the HTC Action, AVT Resp. Br. at 9 (underlining added).)  This argument misses the point.  AVT's statement was about the "nature" of "outgoing video data," not a particular prior art reference.  The statement is relevant to how one of ordinary skill would understand this term regardless of whether it rises to the level of a disclaimer.  *See Inv. Tech. Grp., Inc. v. Liquidnet Holdings, Inc.*, Nos. 07 Civ. 510(SAS), 07 Civ. 6886(SAS), 2010 WL 199912, at *10 (S.D.N.Y. Jan. 19, 2010) (Scheindlin, J.) ("District courts use prosecution history to clarify claim language even when they are not applying the prosecution disclaimer doctrine."). AVT does not explain how the "outgoing video data" it was supposedly describing in Bose is any different from the "outgoing video data" in the '788 patent.

Further support for Motorola's and HTC's positions is provided in Fig. 1 (reproduced on the right), which shows two possible pathways for **output** of video-related information from the codec (**12**): (1) when



uncompressed data from video source (**14**) is compressed and then output to transmit channel (**20**) for transmission to another device; and (2) when compressed data from receive channel (**22**) is decompressed and then output to monitor (**16**) for display.  The first and second pathways result in the output of compressed and decompressed data, respectively.  ('788, 3:45-51.)  AVT's argument that "outgoing video data" can include compressed data, therefore, depends on the proposition that it can encompass the data that the first pathway above outputs through transmit channel (**20**).  (Dkt. No. 34 in the HTC Action, AVT Resp. Br. at 11.)

But this is where AVT's position falls apart.  "Outgoing video data" appears in the larger phrase, "**a separate frame memory dynamic random access memory (DRAM) and that provides for** interim storage of incoming and outgoing video data" (emphasis added).  The specification makes clear that the separate frame memory DRAM in this pathway is used to store the *uncompressed* incoming data from the camera.  ('788, 4:63-65 ("The video input/output buffer (VP) **30** is such that the **incoming pixels** [i.e., incoming video data] are **buffered and stored in the external DRAM 18** for raster-scan-to-block conversion."  (emphasis added).)  Nothing in the specification suggests that the separate frame memory DRAM in this pathway ever stores the *compressed* data for output to transmit channel (**20**).  The only situation in the specification where the separate frame memory DRAM is ever used for "outgoing video data" is for storage of <u>decompressed</u> (or "decoded") data for output to monitor (**16**) in the *second* pathway.  ('788, 4:36-55 ("As to be expected, decoding is the opposite of encoding. . . . Within a macroblock, if it is type-intra, it is decoded . . . and is sent out and <u>stored in the frame memory in DRAM 18.</u>  . . . The <u>re-constructed macroblock is the output of the decoder</u> and is <u>stored in the frame memory in DRAM 18</u> . . . .") and 5:66-67 ("A <u>video output, e.g., to the monitor</u> **16** is

provided from a <u>reconstructed macroblock</u> **78.**") (emphasis added).)[1]

As Motorola points out, AVT removed the claim language regarding the outgoing video data being decompressed data supplied to the video output connection to the monitor. (*See* Dkt. No. 30 in the Motorola Action, Moto. Op. Br. at 18-20.) While the Examiner questioned whether such a limitation was disclosed by the specification, AVT expressly disagreed with the Examiner. (08/24/2007 Remarks (Second Supplemental Declaration of Kyle D. Chen at 14) ("Patentee respectfully disagrees with the Examiner's position as to the presence of support for the storing of outgoing video within the DRAM.").) AVT mooted this issue by simply removing this language from the claim. (*Id.*) The most that can be said of the Examiner's position and AVT's response is that they effectively cancelled each other out and have little relevance to claim construction.

The presence of this claim element in the previous claim language, if anything, actually confirms that AVT envisioned that the "outgoing video data" meant decompressed data supplied to the video output connection to the monitor. AVT did **not** remove this language to broaden the claim, but as the simplest way to overcome a written description rejection.

C.     "video compressor/decompressor disposed fully within the chip"

| **Motorola's Construction** | **AVT's Construction** | **HTC's Construction** |
|---|---|---|
| "all circuitry required to perform video compression and decompression being located entirely within the chip" | "circuitry located entirely within the chip for video compression and decompression" | "all circuitry required to perform video compression and decompression being located entirely within the chip with no portions or parts outside" |

---

[1] AVT's argument about "outgoing video data" appears to neglect the different portions of the separate DRAM. The specification explains that the separate DRAM is "partitioned into four sections, (1) an encoder frame buffer (EFB), (2) a decoder frame buffer (DFB), (3) a transmission channel buffer (TCB), and (4) a reception channel buffer (RCB)." ('788, 8:45-49.) Sections (3) and (4) are obviously not part of the separate *frame* memory DRAM. Although the specification explains that the transmission channel buffer (TCB) can store compressed data for output to transmit channel (20) (*id.,* 11:38-40, 51-53), that buffer is not part of the separate frame memory DRAM.

HTC's proposed construction is almost identical to Motorola's. HTC expects that, as it did with HTC's proposed construction, AVT will argue that Motorola's proposed construction "excludes a preferred embodiment of the '788 Patent from the scope of the claims, in which some components controlling the claimed 'compressor/decompressor' may be located outside of the chip" will likely be made in response to Motorola's construction. (Dkt. No. 34 in the HTC Action, AVT Resp. Br. at 2-3.) This argument is without merit, and both Motorola's and HTC's proposed constructions are proper.

The principle that a proposed construction excluding a preferred embodiment "is rarely, if ever, correct," is a narrow one that does not apply here. The Federal Circuit has recognized that a patent may describe multiple different features covered by different claims. "It is often the case that different claims are directed to and cover different disclosed embodiments." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008); *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1337 (Fed. Cir. 2007) ("A patentee may draft different claims to cover different embodiments."). Accordingly, "[i]t is not necessary that each claim read on every embodiment." *Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010). An embodiment disclosed in the specification may, for example, "be within the scope of other allowed but unasserted claims." *PSN Ill., LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1166 (Fed. Cir. 2008). In each of these cases, the prohibition against excluding a preferred embodiment does not apply here.

AVT has claimed that the specification describes a host-controllable adaptive quantization embodiment that, according to AVT, would be excluded by a construction in which all circuitry required to perform video compression and decompression was located entirely within the chip, as Motorola proposes. (Dkt. No. 34 in the HTC Action, AVT Resp. Br. at 2.)

But that supposed "preferred embodiment" was expressly recited in unasserted independent claim 8, which was cancelled during the reexamination. (*See* 10/05/2006 Amendment (Chen Decl., Ex. 4 (Dkt. No. 33-4 in the HTC Action)) at 12.) This is shown by a side-by-side comparison between the allegedly excluded preferred embodiment and unasserted claim 8:

| AVT's Allegedly Excluded "Preferred Embodiment" | Unasserted and Cancelled Claim 8 |
|---|---|
| "The DCTQ 34 is host-programmable by virtue of the parameter register 83, which allows for adaptive quantization and rate buffer control. This provides for the optimization of a variety of applications in different environments." (AVT Resp. Br. at 4 (quoting '788, 7:27-32).) | "host-programmable means in the DCTQ means for adaptive quantization and rate buffer control providing for the optimization of a variety of applications with individual environments, . . ." (Cancelled Claim 8) |

As shown above, the features of the supposedly excluded "preferred embodiment" are recited almost verbatim in cancelled claim 8. Claim 8 did not recite the term at issue here, "video compressor/decompressor disposed fully within the chip." The adaptive quantization feature cited by AVT is not recited in any of the claims of the '788 patent that survived reexamination.

As the Federal Circuit recognized in *PSN Illinois, supra*, "an applicant may have cancelled pending claims but not amended the specification to delete disclosure relevant only to the cancelled claims." 525 F.3d at 1166. This is precisely what occurred here. "In such cases, unasserted or cancelled claims may provide 'probative evidence' that an embodiment is not within the scope of an asserted claim." *Id.*

AVT has also argued that this feature is covered by unasserted claim 20, but AVT is mistaken. (Dkt. No. 34 in the HTC Action, AVT Resp. Br. at 4.) Claim 20 recites that "the quantizer includes an adjustable threshold for increasing a run of zeros of the transform coefficient." This feature has nothing to do with the feature relied upon by AVT and is separately described in a different portion of the specification. (*Compare* '788, 7:27-31

(describing adaptive quantization feature), 8:10-12 (describing adjustable threshold feature of claim 20).) The fact that the adaptive quantization feature relied upon by AVT was so clearly recited in claim 8 – and only in claim 8 – provides strong evidence that the feature is not covered by claim 20 or any other claim. *See PSN Ill.*, 525 F.3d at 1166.

### D. "dedicated hardware logic"

| Motorola's Construction | AVT's Construction | HTC's Construction |
| --- | --- | --- |
| "integrated circuitry for performing specific tasks (e.g., DCT/IDCT), without using a general-purpose processor" | "specific integrated circuitry or circuit elements for the purpose of performing video compression and decompression" | "circuit elements specifically designed to perform both forward and inverse discrete cosine transforms, with no separate and distinct circuit elements used for only forward or inverse discrete cosine transforms" |

While HTC does not disagree that "dedicated hardware logic" excludes any general purpose processor, HTC does not believe Motorola's construction captures the disclaimers that AVT made during reexamination. HTC agrees with Motorola that the entire forward and inverse discrete transforms must both perform by the dedicated hardware logic because of AVT's disclaimers. (*See* Dkt. No. 30 in the Motorola Action, Moto. Op. Br. at 12.) However, Motorola's construction, while not entirely inconsistent with HTC's construction, does not expressly include the limitation that the dedicated hardware logic should include "no separate and distinct circuit elements used for only forward or inverse discrete cosine transforms."

This clause, as proposed by HTC, is a natural consequence of AVT's disclaimer in light of the plain claim language. As explained by HTC, AVT disclaimed any use of "separate and distinct" circuit elements for performing forward and inverse discrete cosine transforms. (Dkt. No. 32 in the HTC Action, HTC's Opening Claim Construction Brief at 15-16.) The plain language of the claims requires that both forward and inverse discrete cosine transforms be performed by "the **same** dedicated hardware logic." This language, coupled with AVT's

disclaimers in the prosecution history, makes clear that the dedicated hardware logic for **both** forward and inverse discrete cosine transforms must be *one-and-the-same* with "no separate and distinct circuit elements used for only forward or inverse discrete cosine transforms."

AVT distinguished the prior art that included "two separate and distinct pieces of hardware [that] are used for forward and inverse DCT [discrete cosine transforms]." (*See* 10/05//2006 Amendment (Chen Decl., Ex. 4 (Dkt No. 33-4 in the HTC Action)) at 14.) AVT distinguished its alleged invention from the prior art's "use of separate forward and inverse DCT hardware blocks [that] complicates the design and implementation of the CODEC." (*Id.*) AVT further stated that the prior art "does not teach or suggest using the **same** dedicated hardware logic for forward and inverse DCT, or more importantly, how the **design can be simplified to use the same dedicated hardware logic**" *Id.* (emphasis added).

The inescapable consequence of AVT's arguments is that the '788 claims exclude systems with separate pieces of hardware that perform only one of the two transforms. The claimed system must instead have the **same** piece of hardware that performs **both** transforms. *See N. Am. Container*, 415 F.3d at 1345 (the inescapable consequence of an argument distinguishing prior art based on a feature of the art is that the scope of applicant's invention cannot cover devices with that same feature).

The claim language requires performance of **both** forward and inverse transforms. A system that has a **separate** piece of hardware that performs **only** the forward transform inevitably requires at least one other separate piece of hardware to perform the inverse transform (and vice versa). Such a system, however, has exactly the disclaimed "use of *separate* forward and inverse DCT [discrete cosine transform] hardware blocks." The claimed '788 invention therefore is not allowed to recapture this disclaimed use of "separate and distinct circuit elements

used for only forward or inverse discrete cosine transforms," as HTC has proposed.  *N. Am. Container*, 415 F.3d at 1349 ("a patentee is precluded from regaining the subject matter that he surrendered in an effort to obtain allowance of the original claims.")

HTC agrees with Motorola that AVT's argument that it did not made a disclaimer regarding the Shimoda reference is without merit.  (See Dkt. No. 30 in the Motorola Action, Moto. Op. Br. at 12.)  AVT appears to tacitly acknowledge that it made a disclaimer during the reexamination file history, but suggests that the disclaimer should extend only to the exact arrangement as shown in Figure 17 of Shimoda.  (*See* Dkt. No. 34 of the HTC Action, AVT Resp. Br. at 14-15.)  That arrangement features (1) a first hardware piece that performs only the <u>forward</u> transform and (2) a second hardware piece that performs only the <u>inverse</u> transform.  (*See id.*)  AVT's position is wrong.  AVT's disclaimer went beyond simply distinguishing the arrangement of Shimoda.  AVT not only told the Patent Office that "the use of separate forward and inverse DCT hardware blocks complicates the design and implementation of the CODEC," but that "more importantly, [the prior art does not disclose] how the design can be simplified to use the **same** dedicated hardware logic."  (10/05/2006 Amendment (Chen Decl., Ex. 4 (Dkt. No. 33-4) at 14 (emphasis added).)

As Motorola points out (Dkt. No. 30 in the Motorola Action, Moto. Op. Br. at 11-12), Federal Circuit law makes clear that a disclaimer distinguishing a prior art feature extends to all systems with that feature, not *just* the precise prior art itself.  *See N. Am. Container*, 415 F.3d at *id.* at 1345-46 (holding that "the applicant, through argument [that the prior-art inner walls are "*slightly* concave"] during the prosecution, disclaimed inner walls of the base portion having *any* concavity . . . [a]lthough the inner walls disclosed in the [prior art] may be viewed as *entirely* concave") (italics supplied); *see also Computer Docking*, 519 F.3d at 1377 ("[W]e have not

allowed [patentees] to assert that claims should be interpreted as if they had surrendered only what they had to.") (citation omitted).  AVT's statements clearly and unmistakably convey that any use of "separate forward and inverse DCT hardware blocks" is disclaimed, not just the precise arrangement as disclosed in Shimoda.  In other words, the '788 invention *requires* the *absence* of any "separate forward and inverse DCT hardware blocks."

AVT has previously attempted to support its argument by presenting a hypothetical chip, but that chip actually illustrates a disclaimed system and supports both Motorola's and HTC's positions.  This hypothetical chip includes two circuit elements: (1) a first circuit element that performs <u>both</u> forward and inverse DCT and (2) a second circuit element that performs <u>only</u> forward DCT.  (Dkt. No. 34 in the HTC Action, AVT Resp. Br. at 15.)  As discussed above, the disclaimer requires the claimed '788 invention to have no "*separate* forward and inverse DCT hardware blocks [that] complicates the design and implementation of the CODEC."  The second circuit element in AVT's hypothetical, which performs **only** forward DCT, is obviously *redundant* because forward DCT is also performed by the first circuit element.  The use of these *separate* first and second circuit elements is precisely the "use of *separate* forward and inverse DCT hardware blocks [that] complicates the design and implementation of the CODEC" that AVT disclaimed.  AVT should not be allowed to recapture this hypothetical chip that has been disclaimed.

## IV.   CONCLUSION

For the reasons stated above and those presented in HTC's opening and responsive claim construction briefs in the HTC Action (Dkt. Nos. 32 and 35), HTC respectfully requests that its proposals be adopted in their entirety.

| | |
|---|---|
| Dated:  October 4, 2012 | Respectfully submitted<br><br>COOLEY LLP<br><br>By: */s/ Kyle Chen*<br>        Kyle Chen<br><br>Jonathan Bach (JPB 9710)<br>1114 Avenue of the Americas<br>New York, NY  10036<br>Phone:  (212) 479-6000<br><br>Admitted *Pro Hac Vice*:<br>Heidi L. Keefe (CA 178960)<br>Mark R. Weinstein (CA 193043)<br>Kyle D. Chen (CA 239501)<br>Five Palo Alto Square<br>3000 El Camino Real<br>Palo Alto, CA  94306-2155<br>Phone:  (650) 843-5000<br><br>Attorneys for Defendants HTC Corporation and HTC America, Inc. |

1065551