WILMERHALE

January 25, 2013

**By Facsimile (Letter Only) and Electronic Filing**

Dominic E. Massa

+1 617 526 6386(t)
+1 617 526 5000(f)
dominic.massa@wilmerhale.com

The Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street, Room 1350
New York, NY 10007

Re:  *Advanced Video Techs. LLC v. Research In Motion Ltd. et al.*, 1:11-cv-8908-CM

<u>Supplemental Letter Brief</u>

Dear Judge McMahon:

      I write on behalf of Defendants Research In Motion Ltd. and Research In Motion Corp. (collectively, "RIM") pursuant to the Court's minute entries requesting (1) treatment of the Court's question whether the '788 patent claim term "interim storage of incoming . . . video data" "encompass[es] both data that has undergone no processing at all (at one end of the chip) and data that has been completely processed, but is now going to be reverse processed (at the other)"; (2) supplemental briefing regarding the invalidity of the asserted claims of the '788 patent for lack of written description support for the phrase "interim storage of . . . outgoing video data"; and (3) how, if at all, the resolution of the former issue impacts the latter.

**I.  "[I]NTERIM STORAGE OF INCOMING . . . VIDEO DATA" REFERS ONLY TO VIDEO DATA INCOMING FROM A CAMERA.**

      Asserted independent claims 5, 13, and 26 (and dependent claims 14, 15, and 22) themselves establish that "incoming . . . video data" refers only to data received from the camera. Specifically, each of these claims is structured as follows:

> 5. A video codec, comprising:
>
> > a single semiconductor chip providing for <u>a video input connection from a camera</u> and a video output connection to a monitor of decompressed data, and a transmit channel and a receive channel of compressed data;
> >
> > an interface connected to the chip for external connection to a separate frame memory dynamic random access memory (DRAM) and that provides for interim storage of incoming and outgoing video data, <u>wherein the incoming video data is video input data from the video</u>

> input connection; and
>
> . . .

Because the "incoming video data" in these claims is explicitly limited to data "from the video input connection," and the "video input connection" is "from a camera," the "incoming video data" is limited to data received "from a camera."

      Thus, in Figure 2, the "incoming video data" refers to data received from the "Video Source" but not the data received from the receive channel 22. AVT's own reference to Figure 2 in its supplemental brief demonstrates this. AVT points to the fact that Figure 2 shows that data "passes through the DRAM first" before passing between the VLC/VLD 36 and FP 38. But Figure 2 also shows the data from the receive channel entering the FP 38 *before* it passes to the DRAM, and FP 38 is a "framing processor." ('788 patent at 4:56-62.) As the Court has recognized, data in intermediate stages of processing cannot be "incoming video data." The only possible "incoming video data" in Figure 2 therefore enters the chip through the "Video Source."

      Though it does not include the "wherein" clause referenced above, asserted independent claim 23 incorporates the same substantive limitation. Specifically, the structure of the first and third portions of the claim demonstrates that the term "video data" refers only to data incoming from a camera or outgoing to a monitor:

> 23. A video codec, comprising:
>
> > a single semiconductor chip providing for [1] a video input connection from a camera and a video output connection to a monitor of decompressed data, and [2] a transmit channel and a receive channel of compressed data;
> >
> > an interface connected to the chip for external connection to a separate frame memory dynamic random access memory (DRAM) and that provides for interim storage of incoming and outgoing video data;
> >
> > a dynamic random access memory (DRAM) in communication with the interface, wherein the DRAM includes [1] segments for storage of video data compression and decompression frames, [2] a transmit buffer and a receive buffer; and
> >
> > . . .

In other words, the DRAM "segments" relate to the paths to the camera and monitor, whereas the DRAM "transmit buffer" and "receive buffer" relate to the transmit channel and receive channel, respectively. ***Only*** as to the segments, however, does claim 23 use the phrase "video data." Because the term "video data" thus relates only to the paths to the camera and monitor, and because as between those two paths the chip receives data only from the camera, the phrase "incoming . . . video data" refers only to temporary storage of data that is incoming from the camera. For the purpose of the Court's treatment of the disputed term "interim storage of incoming . . . video data," therefore, all of the asserted claims are substantively identical.

AVT cites the doctrine of claim differentiation in arguing that "incoming video data" in claim 23 must have a different meaning than in the other asserted independent claims because claim 23 lacks the "wherein" clause. But "when applied to two independent claims," claim differentiation "takes on relevance in the context of a claim construction that would render additional, or different, language in another independent claim superfluous." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006). That is not true here: the language that establishes the meaning of "incoming video data" in claim 23—*i.e.*, the additional claim limitations directed to the subparts of the DRAM—do not appear in the other asserted independent claims, so the "wherein" clause in those claims is not superfluous. And in any event, claim differentiation is "is a guide, not a rigid rule." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991). It "cannot broaden claims beyond their correct scope," *Curtiss-Wright*, 438 F.3d at 1381, as AVT seeks to do here.

II. **THE ASSERTED CLAIMS ARE INVALID BECAUSE THE PHRASE "INTERIM STORAGE OF . . . OUTGOING VIDEO DATA" LACKS WRITTEN DESCRIPTION SUPPORT.**

As the examiner recognized during reexamination of the '788 patent, the specification contains no written description support for the term "interim storage of . . . outgoing video data." And during reexamination and the current claim construction process, AVT has asserted or adopted every fact necessary for the Court to make the same determination as the examiner. All claims reciting "interim storage of . . . outgoing video data"—including all of the asserted claims at issue—are therefore invalid, and summary judgment in favor of RIM is appropriate.

A. **Legal Standard**

The Patent Act provides that "[t]he specification shall contain a written description of the invention." 35 U.S.C. § 112 ¶ 1. The written description requirement exists to "allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (internal quotations omitted). Thus "[t]he purpose of the written description requirement is broader than to merely explain how to 'make and use'; the applicant must also convey with reasonable clarity

to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention." *New Railhead Mfg. L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1295 (Fed. Cir. 2002) (affirming summary judgment of invalidity) (quoting *Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed. Cir.1991)). The specification must "show [that the applicant] had invented ***each feature*** that is included as a claim limitation." *Id.* (emphasis added).

Because every patent has a presumption of validity, a party challenging validity at summary judgment must provide "clear and convincing evidence" that a requirement for patentability, such as written description, was not met. *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2245–46 (2011). Where, as here, such evidence is shown, summary judgment should be granted. *See, e.g., ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1379 (Fed. Cir. 2009) (affirming summary judgment of invalidity of "spikeless" claims where the patentee "failed to point to any disclosure in the patent specification that describes a spikeless valve"); *see also Chore-Time Equip. Inc. v. Cumberland Corp.*, 713 F.2d 774, 778-79 (Fed. Cir. 1983) ("Where no issue of material fact is present . . . courts should not hesitate to avoid an unnecessary trial by proceeding under Fed. R. Civ. P. 56.").[1]

### B. There Is No Written Description Support for the Claim Term "Interim Storage Of . . . Outgoing Video Data"

The examiner correctly determined that the specification of the '788 patent provides no written description support for "interim storage of . . . outgoing video data." (Ex.[2] A (Ex Parte Reexamination Advisory Action) at 5-6 ("the examiner contends that the instant disclosure, as originally filed, does not appear to support limitations directed to the storing of the outgoing video within the DRAM with respect to the video system embodiment of Figures 1 and 2"); *id.* at 6 ("the examiner contends that the instant disclosure, as originally filed, does not support limitations directed to the storing of the incoming or outgoing video within the DRAM with respect to the embodiment of figures 3").) The specification does not contain any written description using the terminology found in the claim and does not contain any written description of any structure or process for the interim storage in the DRAM of outgoing video data. *See New Railhead*, 298 F.3d at 1295 (the specification must "show [that the applicant] had invented ***each*** feature that is included as a claim limitation") (emphasis added).

---

[1] AVT suggests that summary judgment would be improper here. But AVT has not "show[n] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" as required to invoke Rule 56(d), has been aware for months that RIM contends that the term "interim storage of . . . outgoing data" lacks written description support, and was given notice and opportunity to respond to the Court's consideration of invalidity.

[2] Cited exhibits are attached to the accompanying Declaration of Jason H. Liss.

AVT has had ample opportunity to demonstrate such support, as both RIM and related-case defendant Motorola Mobility, LLC ("Motorola") argued in their opening claim construction briefs that the term is unsupported. (*See* RIM's Opening Claim Construction Brief at 10-13; Motorola's Opening Claim Construction Brief at 18-21.) In response, AVT pointed only to the following portion of the specification:

> A separate dynamic random access memory (DRAM) 18 provides storage for incoming and outgoing video data. Video information from the camera 14 or other video input source is compressed by the video codec 12 and transmitted out in compressed form on a transmit channel 20. Conversely, compressed video information is input to the video codec 12 from a receive channel 22, decompressed and output to the monitor 16 or other video output device, e.g., a television set.

(Responsive Claim Construction Brief of Plaintiff AVT at 17 (citing '788 patent at 3:43-51).) This passage, however, does not refer to "interim" storage (or to "temporary" storage), and refers to the "input" and "output" of "video information," but not to the "storage" of "video data." Thus the examiner specifically rejected the notion that this passage provides adequate support for "interim storage of . . . outgoing video data." (Ex. A (Ex Parte Reexamination Advisory Action) at 5-6.) This is because the written description requirement demands specific disclosure of the claimed element, not vague or passing references requiring hypothetical inferences regarding how an apparatus may be constructed or how a system may operate. *See Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1326 (Fed. Cir. 2000) (in affirming judgment of invalidity, observing that "one cannot disclose a forest in the original application, and then later pick a tree out of the forest and say here is my invention"); *see also New Railhead*, 298 F.3d at 1297 ("passing references . . . divorced from any discussion" of the claim element at issue "do not convey to one of ordinary skill" that the applicant was in possession of the claimed invention).

AVT's reliance on Figure 3 of the '788 patent is similarly misplaced. First, contrary to AVT's portrayal of the reexamination history in its briefs, the examiner's written description rejection was not based solely on the embodiments of Figures 1 and 2, and in fact was based on an analysis of Figure 3. (Ex. A (Ex Parte Reexamination Advisory Action) at 6 ("the instant disclosure, as originally filed, does not support limitations directed to the storing of the incoming or outgoing video within the DRAM with respect to the embodiment of figures [*sic*] 3").)

Second, there is no written description of "interim storage of . . . outgoing video data" in Figure 3. Instead, there are numerous lines through which data *could* flow in one direction or another and from one destination to another. AVT's counsel has recognized this ambiguity: rather than arguing that Figure 3 actually demonstrates "interim storage of . . . outgoing video data," AVT's counsel asserted only that the figure "supports *an* interpretation that the video output data . . . *can be* actually data that is coming out of the DRAM." (Ex. B (1/16/2013

The Honorable Colleen McMahon
January 25, 2013
Page 6

Hearing Transcript) ("Tr.") at 58:23-25 (emphasis added).) This sort of vague and theoretical support is insufficient to survive a written description challenge on summary judgment. *See New Railhead*, 298 F.3d at 1295 (affirming invalidity where the inventor "explained that he knew the drawings contained the" claimed element "because he understood the configuration of the device, not necessarily because the drawings showed such a configuration"). Tellingly, AVT distinguished the Bose prior art for essentially the same reason. Although Bose stated that "the two video ports are *interfaced to the chip bus* through individual FIFOs to buffer the DRAM data traffic'," AVT argued that "[t]he question of whether the output video data is stored for an interim in the DRAM is left similarly undisclosed." (Liss Ex. C (Supplemental Amendment After Final) at 19-20 (emphasis in original).) AVT further argued that the Bose drawings did not definitively establish the use of interim storage: "[t]he figures in Bose are instructive in reinforcing this void in the disclosure of Bose." (*Id.*)

AVT further relies on Figure 3 in relation to the "reconstructed macroblock 78." But the portions of the specification cited by AVT are unrelated to each other, appearing more than a full column apart, and AVT's references relate to storage of macroblocks *during* decompression ("the re-constructed macroblock is the output of the decoder and is stored in the frame memory in DRAM 18 *for reconstructing the next frame* 't+1'" ('788 patent at 4:52-55)), not to the interim storage of outgoing video data. Furthermore, AVT's argument that output from the "reconstructed macroblock 78" shows "interim storage of . . . outgoing video data" merely because the data had been stored in the DRAM directly contradicts AVT's own definition of "outgoing video data"—*i.e.*, data that "is *already processed* and is *ready for output*." (*See* RIM's Opening Claim Construction Brief at 12-13.) As with its limitation of the scope of "incoming video data," AVT provided this definition in order to distinguish prior art, and it necessarily excludes intermediate processing steps—for example, the use of the "reconstructed macroblock 78" "for reconstructing the next frame" ('788 patent at 4:50-55)—from the scope of "outgoing video data." AVT cannot use subject matter it excluded from the scope of the term to establish written description support.

> C. **AVT Is Not Entitled to Assert that there is Written Description Support for "Interim Storage of . . . Outgoing Video Data."**

AVT's arguments in favor of written description support for "interim storage of . . . outgoing video data" must fail not only because they are incorrect, as described above, but because they are contrary to AVT's representations to the examiner during reexamination. Specifically, in response to the examiner's written description rejection, AVT stated that "the elements referring to storing outgoing video within the DRAM have been removed." (Ex. D (Second Supplemental Amendment After Final) at 15.) AVT's failure to remove all such elements accounts for the invalidity of the patent.

AVT has argued that its removal of the clause "and wherein the outgoing video data is decompressed data supplied to the video output connection to the monitor" and stated disagreement with the examiner's written description rejection (Ex. D (Second Supplemental Amendment After Final) at 14) are sufficient to cure the written description problem. AVT is wrong, for two distinct reasons.

First, AVT obtained the patent only by assuring the examiner that it had removed "the elements referring to storing outgoing video within the DRAM." AVT did not represent, contrary to its current argument, that it was only removing the clause requiring that "the outgoing video data is decompressed data supplied to the video output connection." Just as a patentee is not entitled to rely on "any interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution *in order to obtain claim allowance*," *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985) (emphasis added), so too AVT should not be permitted to assert claims containing elements that it explicitly told the examiner it would remove *in order to obtain claim allowance*.

Second, and even if AVT is correct (which it is not) that the relinquished scope relates only to the withdrawn clause "wherein the outgoing video data is decompressed data supplied to the video output connection to the monitor," the '788 patent is still invalid for lack of written description support. There is nothing in the existing claims to *exclude* coverage of the withdrawn subject matter; in fact, AVT has asserted both in briefing and argument that the current claims are *broader* than the rejected claims and still cover video data outgoing to the monitor. (AVT's Claim Construction Brief Responsive to Motorola's Opening Claim Construction Brief at 12 ("AVT explicitly set forth its disagreement with the Examiner's position and informed the Examiner that the amended claims include the *broader* phrase "interim storage of . . . outgoing video data") (emphasis added); *id.* at 11 ("'outgoing video data' necessarily includes two types of data" including "data being output on . . . an output connection to a monitor"); Tr. at 52:6-9 ("the patent talks about two types of outgoing data" including "outgoing data on this side of the board that you can output to a monitor").)

The result of AVT's failure to remove the term "interim storage of . . . outgoing video data" or otherwise exclude "interim storage of . . . outgoing video data" to the monitor is therefore that the claims cover subject matter explicitly rejected by the examiner for lack of written description support. This is impermissible, because the written description requirement must be satisfied for the *entire* scope of the claim. *See LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344-47 (Fed. Cir. 2005) (affirming summary judgment of invalidity where the asserted claims covered subject matter that the examiner recognized the specification not to disclose); *see also PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1247 (Fed. Cir. 2002) (reversing denial of JMOL of invalidity where the patentee admitted that the asserted claim "as written, is arguably broader than the examples disclosed").

WILMERHALE

For the foregoing reasons, RIM respectfully requests that the Court enter judgment that the asserted claims of the '788 patent are invalid, and on that basis dismiss all of AVT's claims to relief.

**III. THE SCOPE OF THE TERM "INTERIM STORAGE OF INCOMING . . . VIDEO DATA" DOES NOT IMPACT THE COURT'S CONSIDERATION OF THE WRITTEN DESCRIPTION SUPPORT FO R THE TERM "INTERIM STORAGE OF . . . OUTGOING VIDEO DATA."**

Regardless of the Court's conclusion as to the scope of the term "incoming video data," the asserted claims of the '788 patent are invalid because the term "interim storage of . . . outgoing video data" lacks written description support.

As detailed above, the term "video data" is properly understood to relate only to the chip's connections to a camera and a monitor. The fact that "outgoing video data" relates only to data outgoing to a monitor is therefore a necessary corollary to the fact that "incoming video data" relates only to the connection from a camera. And "interim storage of" data outgoing to the monitor is the precise concept for which the examiner found the patent lacks written description support, the removal of which from the claims was relied on by AVT to obtain claim allowance. *See supra* at 4.

But even if AVT is correct (which it is not) that "incoming video data" relates to data incoming from either a camera or the receive channel, and even if "outgoing video data" therefore relates to data outgoing to either a monitor or the transmit channel, the full phrase "interim storage of . . . outgoing video data" remains unsupported. This is so because the term still covers video data outgoing to the monitor. Broadening a claim that lacks written description support, to encompass both allegedly supported and admittedly unsupported material, yields only an invalid claim. *See supra* at 6-7.

\* \* \*

RIM thanks the Court for the opportunity to present this additional briefing. I am available at the Court's convenience if any further information would assist the Court's consideration of these issues.

Respectfully submitted,

/s/ Dominic E. Massa
Dominic E. Massa